UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| GERALD M. OTREMBA and<br>JULIE M. OTREMBA, | Civil No. 13-871 (JRT/HB) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION<br>AND ORDER ON<br>MOTION TO DISMISS** |
| CITIMORTGAGE, INC. and<br>FEDERAL HOME LOAN MORTGAGE<br>CORPORATION, | |
| Defendants. | |

Jonathan L. R. Drewes and Caitlin Guilford, **DREWES LAW, PLLC**, 1516 West Lake Street, Suite 300, Minneapolis, MN 55408, for plaintiffs.

Gerald G. Workinger, Jr. and Kevin T. Dobie, **USSET, WEINGARDEN & LIEBO, PLLP**, 4500 Park Glen Road, Suite 300, Minneapolis, MN 55416, for defendants.

Plaintiffs Gerald M. Otremba and Julie M. Otremba bring this action against Defendants CitiMortgage, Inc. ("CitiMortgage") and Federal Home Loan Mortgage Corporation ("Freddie Mac"), alleging that the foreclosure sale of their home was invalid. The Court previously dismissed without prejudice Plaintiffs' claims for violation of Minnesota Statutes §§ 580.03 and 580.07 and for quiet title because Plaintiffs' allegations that CitiMortgage failed to properly publish or mail notice of the foreclosure were insufficiently specific. Plaintiffs have since amended their complaint with regard to two of those counts and Defendants again move to dismiss, or, in the alternative, for summary judgment. Based on the Amended Complaint's amended allegations that CitiMortgage

published notice of the foreclosure in a newspaper that did not provide sufficient notice to the relevant area and that CitiMortgage failed to mail notice of the sale's postponement to the occupants, the Court will deny the motion to dismiss the claims under Minn. Stat. § 580.03 and Minn. Stat. § 580.07.

## BACKGROUND

### I.  PLAINTIFFS' ALLEGATIONS

The present action involves a house located in Elko, Minnesota, ("the Property") which Plaintiffs allege they possess and occupy as their principal place of residence. (Am. Compl. ¶¶ 4-5, Jan. 6, 2014, Docket No. 17.)  CitiMortgage obtained an assignment of a mortgage on the Property, which was recorded on January 17, 2012.  (*Id.* ¶ 8.)

Plaintiffs allege that CitiMortgage attempted to foreclose on the Property, ultimately holding a sheriff's sale on June 5, 2012.  (*Id.* ¶ 9.)  Notice of the foreclosure appeared in the Belle Plaine Herald newspaper.  (*Id.* ¶ 13.)  Although originally scheduled for March 13, 2012, the foreclosure sale was later postponed to June 5, 2012. (*Id.* ¶ 27.)  Plaintiffs allege that they did not receive notice of the postponement through first-class mail, as required by Minn. Stat. § 580.07, and that they continued to receive other mail during the time period.  (*Id.* ¶¶ 28-30.)  Plaintiffs thus allege the notice was not sent.  (*Id.* ¶ 31.)  On June 5, 2012 CitiMortgage purchased the Property for $363,759.71 at the sale, which was subsequently recorded.  (*Id.*, Ex. A at 2-3.)[1]

---

[1] The Amended Complaint contains few allegations regarding Defendant Freddie Mac, but a declaration submitted by Defendants indicates that CitiMortgage conveyed its interest in

(Footnote continued on next page.)

## II.   PROCEDURAL HISTORY

Plaintiffs' original complaint, which Defendants removed to this court on April 15, 2013, brought five claims against Defendants.  (*See* Notice of Removal, Ex. 1 ("Compl."), Apr. 15, 2013, Docket No. 1.)  First, Plaintiffs alleged that Defendants violated Minn. Stat. § 580.05 by publishing the Notice of Pendency to Foreclose Mortgage before executing the Power of Attorney to Foreclose.  (Compl. ¶ 13.)  Second, they alleged that the publication of the notice of sale failed to meet the requirements of Minn. Stat. §§ 580.03 and 331A.03 because "[t]he Belle Plaine Herald is not sufficiently circulated in Elko" and "did not provide sufficient notice to the people and area affected by the sale."  (*Id.* ¶¶ 20-21.)  Third, they alleged that Defendants failed to send notice of the postponement of the sale to the Plaintiffs by mail, as required by Minn. Stat. § 580.07.  (*Id.* ¶ 26.)  Finally, Plaintiffs brought claims for quiet title and slander of title, arguing that Defendants wrongfully claimed to have an interest in the Property.  (*Id.* ¶¶ 29-46.)

After Defendants moved to dismiss, the Court dismissed with prejudice Plaintiffs' power of attorney claim (Count I) and slander of title claim (Count V).  *Otremba v.*

---

(Footnote continued.)

the Property to Freddie Mac on September 6, 2012, after purchasing the Property in the foreclosure sale. (Decl. of Paul A. Weingarden ¶ 19, Ex. J at 59-60, Apr. 22, 2013, Docket No. 6.)  It is not clear how Plaintiffs' allegations relate specifically to Freddie Mac, but none of the parties argue or suggest that the Court should treat Freddie Mac differently than CitiMortgage (Defendants do not, for example, argue that the claims against Freddie Mac should be dismissed for reasons distinct from those argued with regard to CitiMortgage).  Thus, the Court will treat Freddie Mac as it does CitiMortgage, and dismiss the claims against Freddie Mac only to the extent it dismisses claims against CitiMortgage.

*CitiMortgage, Inc.*, Civ. No. 13-871, 2013 WL 6388461, at *6 (D. Minn. Dec. 6, 2013). The Court dismissed without prejudice Plaintiffs' claims regarding the validity of the publication (Count II), the mailing of the notice of postponement (Count III), and quiet title (Count IV). *Id*. The Court reasoned that the claims regarding the validity of the publication were merely a formulaic recitation of the elements and required more factual allegations to show that the Belle Plaine Herald is not likely to give sufficient notice. *Id*. at *4. For Count III, the Court recognized there is little a plaintiff can plead regarding whether or not a letter was mailed, but noted that Plaintiffs had not alleged any fact to support their allegation that Defendants failed to mail the notice of postponement. *Id*. at *5. Indeed, Plaintiffs had not even alleged that they did not receive the letter. *Id*.

Plaintiffs subsequently filed an Amended Complaint addressing Counts II and III.[2] To support their claim regarding the validity of the publication, Plaintiffs now allege that the Belle Plaine Herald provided insufficient notice because the paper generally focuses on local events concerning Belle Plaine and devotes one section exclusively to Belle Plaine news. (Am. Compl. ¶¶ 14-15). Plaintiffs allege that other legal newspapers are geographically closer to Elko than the Belle Plaine Herald and that gas stations within a few miles of the Property offer for sale several legal newspapers, but not the Belle Plaine Herald. (*Id*. ¶¶ 19-20.) Finally, they allege that bidders would expect to look for a notice of sale in a newspaper serving the area in which the Property is located. (*Id*. ¶ 22.) To

---

[2] Plaintiffs' Amended Complaint does not include a count for quiet title. Given that the Amended Complaint is now the operative complaint, *see In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000), Plaintiffs thus no longer have a claim for quiet title and the Court will not address that issue further.

support their claim regarding the mailing of the notice of postponement, Plaintiffs now allege they continued to receive first-class mail during the relevant time period, but did not receive a notice of postponement. (*Id.* ¶¶ 29-30.)

Defendants have again moved to dismiss these claims,[3] arguing Plaintiffs' Amended Complaint largely repeats the allegations dismissed in their original complaint.

---

[3] Defendants also move, in the alternative, for summary judgment. Ordinarily, if the parties present, and the Court considers, matters outside of the pleadings, a Rule 12(b)(6) motion must be treated as a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). But the Court may consider exhibits attached to the complaint and documents that are necessarily embraced by the complaint without converting the motion into one for summary judgment. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003). In addition, the Court may consider public records on a motion to dismiss. *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007). Defendants have submitted an affidavit from Paul A. Weingarden, managing partner of Usset, Weingarden & Liebo, PLLP ("UWL") – the law firm handling the foreclosure notices with respect to the Property – stating that UWL sent the notice of postponement to Plaintiffs. (Second Decl. of Paul A. Weingarden ¶¶ 1, 4-5, Jan. 21, 2014, Docket No. 21.) They have also submitted an affidavit from C. Edward Townsend, owner of the Belle Plaine Herald, stating the newspaper published the notice of foreclosure in both print and internet form. (Decl. of C. Edward Townsend ¶¶ 1, 6-8, Jan. 21, 2014, Docket No. 22.) In addition to the affidavits and other exhibits attached to their Amended Complaint, Plaintiffs have submitted an affidavit from their counsel, Jonathan L.R. Drewes, stating that he visited gas stations requesting the Belle Plaine Herald and was unsuccessful in obtaining it. (Decl. of Jonathan L. R. Drewes ¶ 3, Feb. 11, 2014, Docket No. 25.)

The Court declines to convert this motion to one for summary judgment at this time given the existence of continued factual issues for which further discovery seems appropriate. With regard to whether the Court can consider certain documents presented on a motion to dismiss, Defendants have not presented an argument for why the Court should consider the Weingarden and Townsend affidavits in either of their two memoranda in support of their motion to dismiss the Amended Complaint. Instead, they have simply argued that Plaintiffs have failed to produce evidence sufficient to rebut the affidavits under the summary judgment standard of review. Plaintiffs argue that the Weingarden and Townsend affidavits should not be considered because they are outside the pleadings and present factual disputes ripe for further discovery. However, Plaintiffs do not present an argument for why the Drewes affidavit should be considered by the Court at this time. Because they do not appear to be embraced by the Amended Complaint, the Court will not consider the Weingarden, Townsend, or Drewes affidavits. It will, however, consider the exhibits attached to the Amended Complaint (sale documents and a map of the relevant area).

(Mem. in Supp. of Mot. to Dismiss First Am. Compl. at 11, Jan. 21, 2014, Docket No. 23.)  Defendants also argue that the Sheriff's Certificate of Sale is prima facie evidence that the foreclosure was valid such that both of Plaintiffs' claims fail as a matter of law.  (*Id* at 8.)  Specifically with regard to Plaintiffs' claim under Minn. Stat. § 580.03, Defendants argue that the qualifications of other newspapers do not affect whether the Belle Plaine Herald is also a qualified newspaper.  (*Id*. at 12.)  They also argue that Plaintiffs do not have standing to bring a claim challenging the validity of the publication because the statute requiring publication of the sale was not intended to benefit homeowners.  (*Id*. at 12-13.)  With regard to mailing the notice of postponement, Defendants argue the notice was sent and that Minn. Stat. § 580.07 does not require the notice to be received.  (*Id*. at 8.)

## ANALYSIS

### I.  STANDARD OF REVIEW

Reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true, and construes the pleadings in a light most favorable to the non-moving party.  *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).  To survive a motion to dismiss, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  That is, to avoid dismissal, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility," and therefore must be dismissed. *Id.* (internal quotation marks omitted). In reviewing a motion to dismiss, "the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (citations and internal quotation marks omitted).

## II.    SHERIFF'S CERTIFICATE OF SALE

Defendants argue that the presence of a Sheriff's Certificate of Sale provides prima facie evidence that the foreclosure was valid such that Plaintiffs' claims fail as a matter of law. *See* Minn. Stat. § 580.19 ("Every sheriff's certificate of sale made under a power to sell contained in a mortgage shall be prima facie evidence that all the requirements of law in that behalf have been complied with . . . ."). Given that this is the pleading stage, however, prima facie evidence is not dispositive of Plaintiffs' claims. Although Minnesota courts have not had many opportunities to determine what showing is sufficient to rebut the presumption created by the Sheriff's Certificate, as explained below the Court finds that the Amended Complaint adequately alleges violations of Minnesota's foreclosure procedures which, if true, would rebut this presumption of

validity.  *Cf. Walsh v. U.S. Bank, N.A.*, No. A13-0742, 2013 WL 6050427, at *3 (Minn. Ct. App. Nov. 18, 2013), (holding that where "the complaint includes allegations contrary to the prima facie evidence provided by the sheriff's certificate," the "sheriff's certificate cannot be used as an alternative basis to show proper service" or as a basis to dismiss the action) *review granted* (Jan. 21, 2014).  The Court will thus not dismiss the claims under Minn. Stat. §§ 580.03 and 580.07 on this ground.

### III.   PUBLICATION OF NOTICE - MINN. STAT. §§ 580.03 AND 331A.03

Next, the Court must determine whether Plaintiffs adequately allege that Defendants violated Minn. Stat. § 580.03 by publishing notice of the foreclosure in the Belle Plaine Herald.  Minn. Stat. § 580.03 provides:

> Six weeks' published notice shall be given that such mortgage will be foreclosed by sale of the mortgaged premises or some part thereof, and at least four weeks before the appointed time of sale a copy of such notice shall be served in like manner as a summons in a civil action in the district court upon the person in possession of the mortgaged premises, if the same are actually occupied.

Minn. Stat. § 580.03.  Minn. Stat. § 331A.03 further delineates where such notice must be published:

> Except as provided in subdivision 2, a public notice shall be published in a qualified newspaper, and except as otherwise provided by law, in one that is likely to give notice in the affected area or to whom it is directed. When a statute or other law requires publication in a newspaper located in a designated political subdivision or area and no qualified newspaper is located there, publication shall be made in a qualified newspaper likely to give notice unless the particular statute or law expressly provides otherwise.

Minn. Stat. § 331A.03.

As a threshold matter, the Court finds that, contrary to Defendants' argument, Plaintiffs have standing to assert this claim. The Minnesota Supreme Court has stated that the requirements of Chapter 580 of the Minnesota Statutes must be strictly complied with or the foreclosure is void, not merely voidable by a party who suffers prejudice. *See Jackson v. Mortg. Elec. Registration Sys., Inc.*, 770 N.W.2d 487, 494 (Minn. 2009) ("We require a foreclosing party to 'show exact compliance' with the terms of the statutes. If the foreclosing party fails to strictly comply with the statutory requirements, the foreclosure proceeding is void." (internal citations omitted)). The Minnesota Supreme Court has also recently voided a foreclosure for lack of compliance with another requirement in chapter 580 of the Minnesota Statutes, over the mortgagee's objection that such relief was not available because the mortgagor was not the intended beneficiary of the statute. *See, e.g.*, *Ruiz v. 1st Fid. Loan Servicing, LLC*, 829 N.W.2d 53, 56-57, 59 (Minn. 2013) ("because we conclude that the foreclosure is void for failure to strictly comply with Minn. Stat. § 580.02(3), which requires all assignments of a mortgage to be recorded before a party is entitled to make a foreclosure by advertisement, we decline to address the parties' other arguments," where defendant argued that "foreclosure is voidable only when a complaining party establishes that she is the intended beneficiary of the protection afforded by the statutory requirements at issue and that the foreclosing party's non-compliance with such requirements is prejudicial").

Defendants point to *Badrawi v. Wells Fargo Home Mortg., Inc.*, 718 F.3d 756, 759 (8th Cir. 2013) as an example of courts holding that homeowners cannot assert a claim for noncompliance with certain foreclosure statutes. But *Badrawi* can be distinguished

because it involved a different section of the statute, Minn. Stat. § 580.032, which specifically refers to individuals with "a redeemable interest in real property." *See* Minn. Stat. § 580.032, subd. 1; *see also Badrawi*, 718 F.3d at 759. When the foreclosure statute at issue does not contain such language (and § 580.03 does not), *Badrawi* need not apply, and the Court will instead follow the direction from the Minnesota Supreme Court in *Ruiz* that foreclosures are voidable when there is not strict compliance with the statute. *See Mann v. Nationstar Mortg., LLC*, Civ. No. 14-99, 2014 WL 2480583, at *6 (D. Minn. May 28, 2014) (distinguishing *Badrawi* where plaintiff brought suit under a section other than § 580.032).

Because the Court finds that Plaintiffs have standing to bring this claim, it will now assess its merits. Minnesota Statutes § 580.03 requires a notice of the foreclosure to be published for six weeks and Minnesota Statutes § 331A.03, subd. 1, specifies that the publication in which the notice appears must be a "qualified newspaper . . . that is likely to give notice in the affected area or to whom it is directed." A "qualified newspaper" is one that meets various requirements regarding form, content, and frequency of distribution, and is "circulated in the political subdivision which it purports to serve." Minn. Stat. § 331A.02, subd. 1. "Political subdivision" is defined as "a county, municipality, school district, or any other local political subdivision or local or area district, commission, board, or authority." Minn. Stat. § 331A.01, subd. 3.[4]

---

[4] Defendants argue in their Reply that notice was adequate because it was posted on the Belle Plaine Herald's website for at least six weeks. *See* Minn. Stat. § 331A.02, subd. 5 ("If, in the normal course of its business, a qualified newspaper maintains a Web site, then as a condition

(Footnote continued on next page.)

The Secretary of State maintains a list of newspapers that meet the technical qualification requirements of § 331A.02 and the Belle Plaine Herald is on the list.[5] *See* Minn. Stat. § 331A.02, subd. 1(j) ("The secretary of state shall make available for public inspection a list of newspapers that have filed. Acceptance of a filing does not constitute a guarantee by the state that any other qualification has been met."); *see also* http://www.sos.state.mn.us/index.aspx?page=98. Elko does not have a newspaper that appears on the Secretary of State's list. *See* http://www.sos.state.mn.us/index.aspx?page=98. However, Elko is located in Scott County, which has several qualified newspapers, including the Belle Plaine Herald. *See id.*

Plaintiffs argue that, although the Belle Plaine Herald is listed as a qualified newspaper for Scott County, their allegations sufficiently allege that the Belle Plaine Herald did not provide sufficient notice to the area affected by the sale of the Property because the Belle Plaine Herald is not sufficiently circulated in Elko and focuses its content on Belle Plaine. In their original complaint, Plaintiffs alleged only that "[t]he Belle Plaine Herald is not sufficiently circulated in Elko to make it a qualified newspaper to publish the notice" and that it "did not provide sufficient notice to the people and area

---

(Footnote continued.)

of accepting and publishing public notices, the newspaper must agree to post all the notices on its Web site at no additional cost."). But this does not alter the Court's analysis because the Court concludes that Plaintiffs have adequately alleged that Defendants failed to comply with the notice requirements on account of **which** newspaper constitutes adequate notice rather than **how long** or **how** the notice was published.

[5] The Court may take judicial notice of the Secretary of State's list – a public record – without converting the motion to dismiss into a motion for summary judgment because the list is a public record. *See Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007).

affected by the sale." (Compl. ¶¶ 20-21.) In its previous Order, the Court concluded these allegations were insufficient to survive the motion to dismiss because they were merely a formulaic recitation of the elements required. *Otremba*, 2013 WL 6388461 at *4. Plaintiffs have since amended their complaint in this regard and now allege: (1) "The Belle Plaine Herald has a 'local' section devoted exclusively to Belle Plaine related articles that do not relate, or relate only incidentally, to residents of the area of Elko;" (2) gas stations within a few miles of the Property contain several legal newspapers, but do not carry the Belle Plaine Herald; and (3) potential bidders "would expect to look for such a notice of sale in a newspaper actually servicing the area of the Subject Property." (Am. Compl. ¶¶ 15, 20, 22.)

The Court concludes that these new, more detailed, allegations suffice to state a claim under Minn. Stat. § 580.03. First, a newspaper does not necessarily meet the notice requirements for a particular property simply because it is a qualified newspaper for the county in which the property is located. *See Furlow v. HSBC Bank USA*, Civ. No. 55-11-928, slip op. at 5-6 (Minn. 3d Jud. Dist. June 7, 2011); *Pearson v. Wells Fargo Bank, N.A.*, Civ. No. 55-11-3929, slip op. at 12 (Minn. 3d Jud. Dist. Sept. 1, 2011).[6] Instead, the statute requires that the notice appear in a paper "likely to give notice in the affected area or to whom it is directed." Minn. Stat. § 331A.03, subd. 1. Although there is little case law interpreting the meaning of "likely to give notice" in § 331A.03, *see Furlow v. HSBC Bank USA*, at 4, a few cases have provided some guidance. For example, in

---

[6] These unpublished Minnesota district court orders are available on the docket. (Decl. of Michael J. Wang, Exs. A, B, May 13, 2013, Docket No. 11.)

*Electro-Measure, Inc. v. Ewald Enterprises, Inc.*, 398 N.W.2d 85 (Minn. Ct. App. 1986), the Minnesota Court of Appeals interpreted a very similar Wisconsin statute governing publication for purposes of obtaining personal jurisdiction and concluded that the statute codified the Supreme Court's ruling in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950). *Id.* at 88. Therefore, the statute required the notice to be "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* (quoting *Mullane*, 339 U.S. at 314). In *Pearson*, the Minnesota District Court interpreted the Minnesota statute to require the notice to be "published in [a] qualified newspaper that had a high probability of giving notice" to the homeowners and the area in which the property was located. *Pearson* at 10-11. Therefore, even though it was listed as a qualified paper for the county, a publication was held to provide insufficient notice when none of the areas it purported to serve were in the same zip code as the subject property and the paper served the corner of the county opposite to the property's location. *Id*. Similarly, in *Furlow*, the court found a newspaper notice to be insufficient when the plaintiffs had no known ties to the city where the newspaper was based and two of the six municipalities it served were outside the county in which the property was located. *Furlow*, at 5-6. Taken together, these cases show that the Court must assess not only whether the chosen newspaper technically complies with the requirements and is listed by the Secretary of State, but also whether it is actually likely to provide notice to the affected individuals in the affected area.

Although some of Plaintiffs' allegations are similar to those in cases which have been dismissed, the Amended Complaint as a whole is more robust than the complaints at issue in prior cases. For example, in *Bland v. Deutsche Bank National Trust Co.*, Civ. No. 13-758, 2013 WL 4519423 (D. Minn. Aug. 26, 2013), the court granted a motion to dismiss despite the plaintiffs' submissions showing a website indicating the Jordan Independent's content is "all about the city of Jordan." *Id.* at *3. The court noted that "Plaintiff's Complaint contains no allegation that the newspaper is not circulated in Shakopee or any other factual support for her claim that [it] was unlikely to provide notice in the affected area." *Id.* Here, Plaintiffs have alleged plausible facts in support of their claim that the Belle Plaine Herald is unlikely to provide notice to bidders in the affected area, noting in particular its absence from gas stations near the property. (*See* Am. Compl. ¶ 20.) In *Fleming v. HSBC Finance Corp.*, Civ. No. 13-1039, 2013 WL 3995614 (D. Minn. Aug. 5, 2013), the court granted a motion to dismiss despite the plaintiffs' submissions, which included (1) a website which indicated the newspaper was "the official newspaper" for several cities, but not the one in which the property was located, and (2) an unlabeled map that was alleged to show where the paper was distributed. *Id.* at *2. The court reasoned that the website showed only that the newspaper was distributed in other cities, but failed to show that it was not also distributed near the property. *Id.* Because the map had no caption or explanation, the court concluded it could not know what the shaded areas indicated. *Id*. The complaint contained no other facts to support the conclusion that it was not an appropriate legal publication for the notice. *Id*.

The instant Amended Complaint contains more detailed allegations than the submissions in *Fleming*: in addition to the allegations that the Belle Plaine Herald is a local publication and focuses on Belle Plaine events, which are similar to the allegations dismissed in *Fleming*, the pleadings here additionally allege that the Belle Plaine Herald is not found in gas stations near the property and is therefore not likely to give notice to potential bidders, which has no parallel in the complaint in *Fleming*.  Because the Amended Complaint contains factual allegations supporting Plaintiffs' assertion that the Belle Plaine Herald does not provide notice to the area in which the property is located, it is sufficient to survive the motion to dismiss.[7]

---

[7] Defendants further argue that even if § 580.03 must be strictly complied with, § 331A.03 need not be strictly complied with because it is not found in Chapter 580.  This argument is not convincing.  The court in *Hunter v. Anchor Bank, N.A.*, 842 N.W.2d 10, 15 (Minn. Ct. App. 2013), *review denied* (Mar. 18, 2014), found that strict compliance is required for all statutes within Chapter 580, and did so by noting that *Jackson*, 770 N.W.2d at 494, required strict compliance with "foreclosure-by-advertisement statutes."  *Hunter*, 842 N.W.2d at 14.  *Hunter* treated *Jackson*'s reasoning as extending to all statutes in Chapter 580 likely because most foreclosure-by-advertisement statutes are located in Chapter 580.  However, § 331A.03 also operates as a foreclosure-by-advertisement statute.  Therefore, the reasoning of *Jackson* applies with equal force to § 331A.03 as a foreclosure-by-advertisement statutes, and mandates strict compliance with the statute.

Defendants' further argument that Plaintiffs' allegations fail because Minn. Stat. § 331A.03 is ambiguous as to whether it requires that notice be likely to give notice to "whom it is directed" or "the affected area," *see* Minn. Stat. § 580.03, is unavailing, as Plaintiffs have alleged that the choice of the Belle Plaine Herald was not likely to give notice to potential bidders because they "would expect to look for such a notice of sale in a newspaper actually servicing the area of the Subject Property." (Am. Compl. ¶ 22.)

**IV.   MAILING OF NOTICE OF POSTPONEMENT – MINN. STAT. § 580.07**

The Court must next determine whether Plaintiffs have stated a claim that Defendants failed to comply with Minn. Stat. § 580.07. When a foreclosure sale is postponed, the statute requires the foreclosing party to, among other things:

> (1) publish, only once, a notice of the postponement and the rescheduled date of the sale, if known, as soon as practicable, in the newspaper in which the notice under section 580.03 was published; and (2) send by first class mail to the occupant, postmarked within three business days of the postponed sale, notice (i) of the postponement; and (ii) if known, of the rescheduled date of the sale . . . .

Minn. Stat. § 580.07, subd. 1(a).

When dismissing Plaintiffs' original complaint without prejudice, the Court noted, that "there is little a plaintiff can reasonably be expected to plead in order to state a claim that a letter was not mailed. . . . But Plaintiffs have not even explicitly alleged that they did not receive the letter – or any other fact that supports their assertion the letter was not sent." *Otremba*, 2013 WL 6388461 at *5. In their Amended Complaint, Plaintiffs now explicitly allege they did not receive the letter. (Am. Compl. ¶ 30 ("The Otrembas never received a notice of postponement of the sale from CitiMortgage.").) Additionally, Plaintiffs allege they continued to receive other first-class mail during the relevant time period, even though they did not receive the notice of postponement. (*Id*. ¶ 29.) Therefore, they allege "[u]pon information and belief" that the letter was not sent. (*Id*. ¶ 31.)

Although there is a presumption under Minnesota law that mail that has been sent was delivered and received, that presumption can be rebutted. *See Nafstad v. Merch.*,

228 N.W.2d 548, 550 (Minn. 1975). When a party denies receipt of the letter, the burden shifts to the opposing party to prove it was sent by a preponderance of the evidence. *Id*. Similarly, while properly mailed service is complete when sent, misaddressed mail is not complete upon mailing. *Wise v. Bix*, 434 N.W.2d 502, 504 (Minn. Ct. App. 1989). Given that this is the pleading stage and Plaintiffs allege both that CitiMortgage did not send the letter and that Plaintiffs did not receive it, the Court will not dismiss this claim on the basis of this presumption at this time. It is possible that given the opportunity for discovery, Plaintiffs will obtain additional evidence that supports their assertion that the notice was not sent or explain why it was not received.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [Docket No. 19] is **DENIED**.

DATED: September 16, 2014　　　　　　　　\_\_\_\_s/ John R. Tunheim\_\_\_\_
at Minneapolis, Minnesota.　　　　　　　　　　JOHN R. TUNHEIM
　　　　　　　　　　　　　　　　　　　　　　United States District Judge